IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ALEXSI RIVERA-TUFIÑO,

Plaintiff

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant

CIVIL 09-1865 (JA)

## OPINION AND ORDER

On August 28, 2009, plaintiff filed this petition for judicial review of a final decision of the Commissioner of Social Security which denied her application for a period of disability and Social Security disability insurance benefits. Plaintiff filed a comprehensive 32-page memorandum of law plus a copy of SSR 96-9p (Determining Capability To Do Other Work—Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work) against such final decision on March 19, 2010. (Docket No. 9.) The defendant filed a thoughtful memorandum in support of the final decision on May 11, 2010. (Docket No. 12.) Plaintiff then filed a terse 10-page reply memorandum on May 24, 2010. (Docket No. 16.)

The only issue for the court to determine is whether the final decision that plaintiff is not under a disability is supported by substantial evidence in the record

CIVIL 09-1865 (JA)                                        2

when looking at such record as a whole.  In order to be entitled to such benefits, plaintiff must establish that she was disabled under the Act at any time on or before September 30, 2005, when she last met the earnings requirements for disability benefits under the Social Security Act.  See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 140 n.3 (1st Cir. 1987).

After evaluating the evidence of record, Honorable Solomon Goldman, administrative law judge, entered the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2005.
2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of December 31, 2001, through her date last insured of September 30, 2005 (20 CFR 404.1520(b) and 404.1571, et seq.).
3. Through the date last insured, the claimant had the following severe impairment: anxiety related disorders (20 CFR 404.1520(c)).
4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to lift and carry 25 pounds frequently and 50 pounds occasionally.  She can push and pull with the upper and lower extremities and perform hand and foot controls.  The claimant does not have postural, manipulative, visual, communicative, or environmental limitations.  From the mental standpoint, she is able to understand, remember, and carry out simple and detailed instructions, make simple work-related decisions, sustain attention and concentration for extended periods without undue interruptions, sustain persistence at tasks,

CIVIL 09-1865 (JA)                                       3

        maintain social interaction with some people, and adapt appropriately to change in the work setting.
6. Through the date last insured, the claimant was unable to perform past relevant work (20 CFR 404.1565).
7. The claimant was born on December 18, 1969 and was 32 years old, which is defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563).
8. The claimant has at least a high school education and is not able to communicate in English (20 CFR 404.1564).
9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
10. Through the dated last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c) and 404.1566).
11. The claimant was not under a disability as defined in the Social Security Act, at any time from December 31, 2001, the alleged onset date, through September 30, 2005, the date last insured (10 CFR 404.1520(g)).

Tr. at 21-27.

    Plaintiff generally has the burden of proving that she has become disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137 (1987). A finding of disability requires that plaintiff be unable to perform any substantial gainful activity or work because of a medical condition which has lasted or which can be expected to last for a continuous period of at least twelve months. See 42 U.S.C. § 416(i)(1). In general terms, evidence of a physical or mental impairment or a combination of both is insufficient for the Commissioner

CIVIL 09-1865 (JA) 4

to award benefits. There must be a causal relationship between such impairment or impairments and plaintiff's inability to perform substantial gainful activity. See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 (1st Cir. 1986). Partial disability does not qualify a claimant for benefits. See Rodríguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965).

The administrative law judge ended the sequential inquiry at step five. At this level, it has already been determined that the claimant cannot perform any work she has performed in the past due to a severe impairment or combination of impairments. The inquiry requires a consideration of the claimant's residual functional capacity as well as the claimant's age, education, and past work experience to see if the claimant can do other work. If the claimant cannot, a finding of disability will follow. See 20 C.F.R. § 404.1520(f). At step five, the Commissioner bears the burden of determining that significant jobs exist in the national economy given the above factors. See Nguyen v. Chater, 172 F.3d 31 (1st Cir. 1999); Lancelotta v. Sec'y of Health & Human Servs., 806 F.2d 284 (1st Cir. 1986); Vázquez v. Sec'y of Health & Human Servs., 683 F.2d 1, 2 (1st Cir. 1982). Had the Commissioner determined that plaintiff could perform her past relevant work the standard would have been different. See 20 C.F.R. § 404.1520(e). At step four the initial burden would have been on plaintiff to show that she could no longer perform her former work, or could not perform it during

CIVIL 09-1865 (JA) 5

the covered period, because of her impairment(s). Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996); see Santiago v. Sec'y of Health & Human Servs., 944 F.2d 1, 5 (1st Cir. 1991). Thence, the Commissioner would have compared the physical and mental demands of the past work with the current functional capability. See 20 C.F.R. § 404.1560(b). At stage four, the administrative law judge is entitled to credit a claimant's own description of her former job duties and functional limitations but has some burden independently to develop the record. See Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d at 17; Santiago v. Sec'y of Heath & Human Servs., 944 F.2d at 5-6. A major difference between step four and step five of the sequential process is that the burden of production shifts. While plaintiff always has the burden of proving disability, the burden of production shifts to the Commissioner at step 5 to show that jobs exist in the national economy which plaintiff can perform on a sustained basis. See Seavey v. Barnhart, 276 F.3d 1, 10 n.9 (1st Cir. 2000).

The medical and administrative record generally reflects the presence of significant mental limitations and ignores any physical limitations which require detailed consideration. Therefore the record reflects no treatment for any physical ailment of a lasting nature. (Tr. at 41, 42, 71, 72, 77, 94.) Progress notes from Continuum Healthcare Advisors, Inc., reflect that plaintiff was psychologically treated from August 30, 1999 to August 26, 2004 and received the following

CIVIL 09-1865 (JA) 6

diagnoses according to psychotherapy notes: posttraumatic stress disorder, acute stress disorder and borderline personality disorder. (Tr. at 150, 158, 166, 176, 180, 182, 184, 186, 188, 190, 194, 196, 198, 200, 208, 214.) Progress notes dated August 26, 2004 showed appearance normal, behavior and mood flow within normal limits, abstraction poor as well as judgment and insight. (Tr. at 164.) On September 20, 2004, she was found to be agitated, cooperative, had flow of thoughts within normal limits, intact memory, and was oriented in time place and person. (Tr. at 162.) Her concentration and attention were adequate, abstraction good, and judgment and insight intellectual. On February 25, 2005, her abstraction was poor but otherwise her mental state was within normal limits. (Tr. at 148.) Similar findings were noted on May 24, 2005. (Tr. at 142.) Generally the treatment notes reflect favorably upon plaintiff's mental capabilities except when she was in crisis which was often.

A psychiatric evaluation by Dr. Gerardo Tejedor dated December 8, 2004 resulted in a diagnostic impression of anxiety disorder with panic attacks and with depressive features. Her affect was restricted with sad mood. She was coherent, logical and without loss of associations. Plaintiff was oriented to person, place and time. Memory was preserved and she had good concentration ability. Intelligence and abstraction was average. Judgment was marginal. Self-esteem was low. She felt worthless. (Tr. at 117-18.)

CIVIL 09-1865 (JA)                              7

A mental residual functional capacity assessment dated January 4, 2005 by clinical psychologist Carlos D. Vázquez reflected no significant limitations and moderate limitations in the ability to work in coordination with or proximity to others without being distracted by them, as well as in social interaction except for the ability to ask simple questions and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (Tr. at 121-24.) The psychologist noted that plaintiff was able to understand, remember, and carry out simple/detailed instructions, make simple decision, sustain attention and concentration for extended periods without undue interruptions. She could perform to a schedule and routine on a sustained basis and complete a normal workday. (Trat 122-24.) A psychiatric review technique form reflected an anxious and depressed mood. (Tr. at 130.) There were mild or moderate functional limitations. Both the mental residual functional capacity assessment and the psychiatric review technique form were reviewed and affirmed by a psychiatrist on July 20, 2005. (Tr. at 125, 137.)

A mental residual functional capacity assessment dated November 4, 2005 showed moderate and marked limitations, more of the latter. She had abrupt changes in mood, reduced interest to dress, decreased energy and lack of interest. (Tr. at 300.) A mental residual functional capacity assessment dated February 15, 2007 by psychiatrist Gerardo Tejedor reflected moderate and

CIVIL 09-1865 (JA)						8

marked limitations, difficulty in learning and following rules because of memory impairment.  (Tr. at 297.)

At the administrative hearing held on March 6, 2007, plaintiff was represented by Salvador Medina de la Cruz, Esq.  She testified that she has an associate's degree and three minor children.  She studied nursing.  She worked taking care of patients at a clinic for about eleven years. (Tr. at 330.)  She stopped working when the place that she worked at was closed.  Plaintiff related significant domestic violence issues with a former partner causing her panic attacks.  She related receiving psychological treatment once a month.  (Tr. at 333.)  Apparently plaintiff was never hospitalized from December 2001 through September 2005.  Medication she was taking at the time of the administrative hearing alleviated her symptoms.  Plaintiff usually spends her time at home sleeping.  (Tr. at 334.)  Medication makes her drowsy.  She explained that she suffers from headaches because she was beaten more than 100 times with a frame.  Before she was beaten up in 2002, she would get panic attacks once a month or one every two months, not often.  (Tr. at 339.)  The panic attacks started when her cousin was killed right next to her.  She continued to work but would run out of work on occasion.  (Tr. at 340.)  During the panic attacks, she feels like she is suffocating; she breaks out in cold sweats.  Her mind goes blank and she doesn't remember after that.  (Tr. at 340.)  Her family and friends help

CIVIL 09-1865 (JA)                              9

her with her three children and have helped her since she was beaten up. (Tr. at 335-36.) Plaintiff does not like to be around people. She does not listen to the radio or watch television. After the beating the panic attacks come two or three times a week. Xanax does not relieve the panic attacks. The attacks last several hours. (Tr. at 342.) Plaintiff also explained that she was abused by her father and grandfather from the age of eight until she was 14 or 15 years old. (Tr. at 343.) Her mother abandoned her at the age of 14. Plaintiff suffers from depression. The pills do not help her with the depression. (Tr. at 345.) The head injuries cause her headaches.

Plaintiff went looking for work between 2003 and 2004 but she did not get the job because she was nervous. She never attended vocational rehabilitation. (Tr. at 338.)

In relation to the testimony of plaintiff at the administrative hearing, the administrative law judge noted, and the transcript so reflects, that plaintiff was able to give a good account of her work history, medical conditions, and activities of daily living. (Tr. at 25.) She did suffer a panic attack while testifying and did cry while testifying.

In his rationale, the administrative law judge related a number of incidents which disrupted plaintiff's emotional stability, such as death of her grandmother, physical aggression from her partner and difficulties in managing her children.

CIVIL 09-1865 (JA)                         10

(Tr. at 23.)  Symptoms improved with prescribed therapy, which included Paxil and Xanax.  At times, plaintiff could effectively deal with her problems and at times she could not.  The administrative law judge noted that plaintiff was oriented in the three spheres, had intact memory, adequate attention and concentration.  Her judgment and insight were described as superficial.  She had a Global Assessment of Functioning of G.A.F. of 75.  (Tr. at 24.)

The administrative law judge noted that the mental residual functional capacity assessments by Dr. Tejedor, made on November 4, 2005 and February 15, 2007, after the covered period, reflected moderate to marked limitations.  His findings reflected a stabilized emotional condition with prescribed medication.  The administrative law judge did not find credible plaintiff's own statements about the intensity, persistence and limiting effects of her symptoms.  (Tr. at 25.)

In relation to plaintiff's residual functional capacity, when a nonexertional limitation is found to impose no significant restriction on the range of work a claimant is exertionally able to perform, reliance on medical-vocational guidelines, known as the GRID, is appropriate.  If the applicant's limitations are exclusively exertional, then the Commissioner can meet the burden through the use of a chart contained in the Social Security regulations.  20 C.F.R. § 416.969; Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2, Tables 1-3 (2001), cited in 20 C.F.R. § 416.969; Heckler v. Campbell, 461 U.S. 458 (1983).

CIVIL 09-1865 (JA)                              11

If the facts of the applicant's situation fit within the GRID's categories, the GRID "directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(a), cited in 20 C.F.R. § 416.969. "However, if the applicant has nonexertional limitations (such as mental, sensory, or skin impairments, or environmental restrictions such as an inability to tolerate dust, id. § 200(e)) that restrict his ability to perform jobs he would otherwise be capable of performing, then the Grid is only a 'framework to guide [the] decision.' 20 C.F.R. § 416.969a(d) (2001)." Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001). In this case the administrative law judge relied on the testimony of a vocational expert as well as the mental residual functional capacity assessments of record, as well as the GRID as a framework, in addition to the medical evidence of record relevant to the covered period.

While plaintiff argues that greater weight must be given to the medical evidence from the treating psychiatrist Gerardo Tejedor, it is well settled that even the opinions of treating physicians are not necessarily entitled to greater weight merely because they are those of treating physicians. Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982); Pérez v. Sec'y of Health, Educ. & Welfare, 622 F.2d 1, 2 (1st Cir. 1980); Rosado-Lebrón v. Comm'r of Soc. Sec., 193 F. Supp. 2d 415, 417 (D.P.R. 2002). The administrative law judge is not always required to give

CIVIL 09-1865 (JA)                              12

such opinions controlling weight.  See 20 C.F.R. § 404.1527(d); Barrientos v. Sec'y of Health & Human Servs., 820 F.2d 1, 2-3 (1st Cir. 1987); cf. Sánchez v. Comm'r of Soc. Sec., 270 F. Supp. 2d 218, 221 (D.P.R. 2003).  The administrative law judge found that the medical evidence is not consistent with plaintiff's allegations, and also did not give full credibility to the allegations because they were not compatible with the information contained in the documentary reports, and the reports of the treating and examining physicians, as well as the medical history during the relevant period.  Dr. Tejedor provided two mental residual functional capacity assessments outside of the covered area which the administrative law judge felt were inconsistent with other evidence of record relevant to the covered area as well as the mental residual functional capacity assessment of a non-examining psychologist.

The administrative law judge noted that in order to determine the erosion of the occupational base through the date last insured, he asked the vocational expert whether jobs existed in the national economy for an individual with plaintiff's age, education, work experience, and residual functional capacity.  The administrative law judge related that the expert testified, given those factors, that the individual would have been able to perform the requirements of representative occupations such as an office helper which exist in an incidence of 3,000 to 5,000 in the regional economy, mail clerk with an incidence of 1,000 to 2,000 in the

CIVIL 09-1865 (JA)                              13

regional economy, and photocopier, with an incidence of 3,000 to 4,000 in the regional economy. The expert classified the jobs as light in exertion and unskilled in nature. The expert said plaintiff could work as a maintenance cleaner, with an incidence of 8,000 to 10,000 in the regional economy. (Tr. at 27.) The administrative law judge's rationale notes, "Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (Tr. at 27.) The administrative law judge then noted that a finding of "not disabled" was appropriate under the framework of Medical-Vocational Rule 203.29.

## DISCUSSION

"Substantial evidence" is 'more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.; see also Currier v. Sec'y of Health, Educ. & Welfare, 612 F.2d 594, 597 (1st Cir. 1980). In this case, a case which clearly requires the translation of medical findings into functional terms, the administrative law judge relied on the GRID as a framework for decision making but required a vocational expert, in order to fully comply with the burden of production of the Commissioner at step five. A reasonable reading of

CIVIL 09-1865 (JA)                    14

the testimony of that vocational expert, brief as that testimony was, leads to one conclusion: that plaintiff could not perform substantial gainful activity during the covered period. The vocational expert was candid in his remarks. A challenged reading of the vocational testimony leads to the flowing conclusion that plaintiff was not disabled and that she could successfully perform sustained gainful activity during the covered period. If one considers the importance of this vocational testimony in the Commissioner's burden, it is a challenge to reasonably conclude that the substantial evidence rule has been complied with at step five. I explain.

After the plaintiff had testified at the administrative hearing, the vocational expert Luis Bonilla testified. At one point, the administrative law judge clarified that he, the judge, was making reference to the covered period and the vocational expert testified as follows:

> A. Yes, sir. From the information I received, she had difficulties performing her duties as a practical nurse and it had become fully difficult that she cannot retain a job.
>
> Q. I assume that she cannot perform her job as a practical or graduate nurse but that there are other jobs that exist within the economy at that time that was [INAUDIBLE].
>
> A. There are some simple jobs that she could do jobs -- as an office helper, main clerk, photocopier machine operator, which as simple as editing, no stress. She would have limitations performing on a sustained basis.
>
> Q. We are talking about the specific period –
>
> A. Yes, sir.

CIVIL 09-1865 (JA)                                    15

    Q. --between December 31, 2001 and September 30, 2005. What would have been the [INAUDIBLE].

    A. Well they are [INAUDIBLE] new jobs. They are in the 1000s. The officer helper is from three to four thousands. The main clerk is from one to two. The photocopier machine operator is from three to four thousand in the national economy.

    Q. Could she have also done maintenance jobs doing general cleaning?

    A. Yes, could perform some cleaning. Cleaner. At a medium level, because physically she is supposed to have resources [INAUDIBLE].

    Q. [INAUDIBLE]

    A. Cleaners, they are around eight to ten thousand [INAUDIBLE] more.

    Q. I'll assume a second hypothetical situation in which [INAUDIBLE] her condition, as it is today, her condition during her critical period, [INAUDIBLE] would she have been able to do those jobs?

    A. No, Your Honor.

Tr. at 350-52.

    The vocational expert then explained that the difficulty with doing those jobs would be in the hiring and screening process.

    The attorney then asked the vocational expert some questions.

    ATTY: Yes, regarding the jobs you mentioned pertaining to the first hypothesis, you said she could do them but with limitations. Would she be able to retain those jobs even with those limitations?

    VE:    No, she couldn't.

CIVIL 09-1865 (JA)                           16

ATTY: She wouldn't be able to retain those jobs right?

VE: That's right.

ATTY: Even the ones you mentioned?

VE: That's right.

Tr. at 352-53.

The administrative law judge asked the attorney, "Is there any statement you would like to [INAUDIBLE] before we close." (Tr. at 353.) The attorney gave a nutshell of traumatic events in plaintiff's life and said: "With the frequency of her attacks, this person would have difficulties retaining a job anywhere because it would be a disruption. It would cause a labor disruption in any job environment, besides that managers would not keep her too long because they would kick her out, she wouldn't be able to retain -- she wouldn't be able to -- not simply functioning if not they would allow her to enter." (Tr. at 353-54.)

The administrative law judge clearly used the residual functional capacity assessments of record, but especially the answers given by the vocational expert at the administrative hearing to comply with the burden of production at step 5. Having considered the record weighed by the administrative law judge, while I generally conclude that the rationale leading to the final decision reflects a reasonable balancing and weighing of evidence and the making of credibility determinations by the administrative law judge, the portentous reliance on the

CIVIL 09-1865 (JA)                    17

testimony of the vocational expert does not comply with the requirements of the substantial evidence rule.  There is medical and vocational evidence from which a reasonable person might find plaintiff disabled during the covered period.  On the other hand, there is also evidence which, if reasonably weighed against evidence to the contrary, can result in a finding of not disabled except if one considers the testimony of the vocational expert, a testimony strongly relied upon by the administrative law judge as well as in the Commissioner's brief.

After considering plaintiff's residual functional capacity as well as her age, education, and past work experience to see if she could do other work, the Commissioner had the burden of establishing that significant jobs exist in the national economy given the above factors.  That did not happen within the ambit of the substantial evidence rule because if one considers the necessity of vocational testimony in carrying the Commissioner's burden, the testimony cannot reasonably support the sweeping conclusion that there were numerous jobs in the economy which plaintiff could perform.  The Commissioner's brief focuses on the precise nature of vocational expertise and its limitations but fails to clearly address the issue of sustainability which  is a vocational factor in considering the ability to perform gainful work.  Plaintiff must be able to work on a sustained basis.  See, e.g., Lancellota v. Sec'y of Health & Human Servs., 806 F.2d 284, 286 (1st Cir. 1986) and SSR 85-16.  Such a finding on my part does not invite a remand to

CIVIL 09-1865 (JA)                                    18

award benefits since it is not clear that plaintiff is entitled to benefits.  See Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001); Seavey v. Barnhart, 276 F.3d at 11-12.  If clarity were to reign, then finding 10 of the administrative law judge would find support beyond that found in the memorandum of law submitted by the Commissioner.  (Docket 12, at 7-8.)  It does not.  Based on the record as a whole, and for the reasons stated above, and considering the medical record and the vocational component which translates medical terms into functional terms, I conclude that the final decision is not based upon substantial evidence.  Therefore, the final decision of the Commissioner is reversed.

The case is remanded to the Commissioner for further proceedings not inconsistent with the above, and if the administrative law judge should require additional vocational testimony, I would hope that the hearing room recording process will be more accurate.  The term INAUDIBLE in this record appears too many times to make review a comfortable process.

This is a sentence for remand under 42 U.S.C.§405(g).  The Clerk is to enter judgment accordingly.

At San Juan, Puerto Rico, this 10th day of August, 2010.

                                                    S/JUSTO ARENAS
                                           Chief United States Magistrate Judge